UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAMAL KRISHAN NAIKER, et al. | Case No. C17-1740-RAJ |
| Plaintiffs, | |
| v. | **ORDER** |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | |
| Defendants. | |

Plaintiffs Kamal Krishan Naiker and Dipanjali Pillay seek review of a decision by the Board of Immigration Appeals ("BIA") on Mr. Naiker's I-130 application. Dkt. # 1. Plaintiffs now move for summary judgment. Dkt. # 13. Defendants United States Citizenship and Immigration Services ("USCIS") and the Department of Homeland Security ("DHS"), responded, and also cross-moved for summary judgment. Dkt. # 14. The parties both filed replies to the competing motions. Dkt. ## 15, 16.

After considering the Administrative Record (Dkt. ## 8, 10) and the parties' arguments, for the following reasons, the Court **DENIES** Defendants' Motion and **GRANTS IN PART** Plaintiffs' Motion.

**I.   BACKGROUND**

Plaintiff Mr. Naiker is a United States citizen who was born in Fiji, and

ORDER – 1

currently lives in Des Moines, WA. P95, P413-417.[1] Plaintiff Ms. Pillay is a citizen and resident of Fiji. *Id*. According to Plaintiffs, Mr. Naiker first met Ms. Pillay briefly in July 2004, at a community prayer event while he was visiting Fiji, and again in 2012 when Mr. Naiker attended a friend's wedding. P95. At that wedding, they talked and exchanged phone numbers. *Id*. After the wedding, Mr. Naiker and Ms. Pillay began talking and text messaging each other. *Id*. When Mr. Naiker returned to the United States, he maintained contact with Ms. Pillay through e-mail and social media. *Id*. In October 2013, Mr. Naiker traveled to Fiji and married Ms. Pillay. *Id*.

On November 29, 2013, Naiker filed an I-130 immigrant petition with USCIS, which approved the application on June 9, 2014 on the basis of the couple's marriage. P414, P444. Subsequently, embassy officials in Fiji interviewed Ms. Pillay to determine if she was eligible for a visa. P60. During the interview, embassy officials apparently showed Ms. Pillay an e-mail purporting to be written by her, which contained the details of her visa appointment, stated that the marriage is a fraud, stated that Pillay did not want to immigrate to the United States, and requested that her visa not be issued. Ms. Pillay denied writing the e-mail and stated that she did not use that address. *Id*. After the interview, the Department of State determined "that the beneficiary is ineligible for the benefit sought" and returned the petition to USCIS for reconsideration of the I-130 petition. *Id*.

On January 4, 2016, USCIS issued a Notice of Intent to Revoke ("NOIR") the previously approved I-130 petition. P60-62. The NOIR explained that the petition was originally approved "based on the petitioner's marriage to the beneficiary," but that USCIS subsequently received the following additional information: (1) based on birth certificates of the couple's parents, Plaintiffs were biological first cousins; (2) Ms. Pillay, during her interview, denied being related to Mr. Naiker, and signed a

---

[1] The Administrative Record is on file with the Court (Dkt. # 8), and record citations are made to page numbers as indicated in the Record.

ORDER – 2

sworn statement to that effect in January 2015; (3) Pillay mistakenly stated that she had an aunt in Washington that was deceased, even though she had an aunt (Mr. Naiker's mother) that was alive; (4) the embassy received e-mails from multiple sources indicating that Mr. Naiker and Ms. Pillay were siblings and the sole purpose of their wedding was for immigration purposes; (5) the embassy received an e-mail from Pillay or someone purporting to be her that contained the details of her visa appointment, stated that the marriage is a fraud, stated that Pillay did not want to immigrate to the United States, and requested that her visa not be issued; and (6) there is a ten-year age gap between Ms. Pillay and Mr. Naiker. P60-61. Based on those issues, USCIS determined that Mr. Naiker did not show that he and Ms. Pillay have a bona fide marital relationship. P61. USCIS offered Mr. Naiker the opportunity to submit additional evidence to oppose the proposed revocation. P62.

On February 6, 2016, counsel on behalf of Mr. Naiker filed a response to the NOIR and included numerous documents, including (1) written statements from both Plaintiffs; (2) letters from family members, friends, a member of Fiji parliament, and coworkers; (3) Facebook posts and messages for a 4-year period; (4) e-mails exchanged between Mr. Naiker and Ms. Pillay; (5) records of the couple's conversations via different telephone applications; (6) proof of Mr. Naiker providing money for Ms. Pillay's education and their wedding expenses; (7) evidence that Ms. Pillay is listed as a beneficiary on Mr. Naiker's investment and retirement accounts; (8) evidence that the couple stayed together in a hotel; (9) itineraries for Mr. Naiker's trips to Fiji; (10) a scrapbook containing purported photos and memories from the couple's relationship; (11) photographs of the couple, including photographs of their marriage ceremony; (12) explanations that cross-cousin marriage was legal and accepted in Fiji; and (13) an explanation that Mr. Naiker never told Ms. Pillay about their biological relationship, as Mr. Naiker's mother was adopted out at an early age and he didn't consider their relationship familial. P75-401.

ORDER – 3

On July 1, 2016, Defendant Gregory Richardson, the Director of the USCIS Texas Service Center, issued a decision that acknowledged the rebuttal evidence but explained that based on "the totality of the non-partisan material evidence coupled with indications that you and your husband the deficiencies [sic] noted in the interview prevent you from meeting your burden of proof in establishing the validity of your marriage." P52. On June 20, 2017, Mr. Naiker then filed an appeal with the Board of Immigration Appeals ("BIA"). P7.

On September 20, 2017, the BIA considered the appeal. P1-5. The BIA found that that plaintiffs did not submit "sufficient evidence to overcome the derogatory information" articulated in the NOIR or to establish the bona fides of their marriage. P4. The BIA also found that Mr. Naiker's claim that Ms. Pillay "was not aware of their familiar relationship until after a consular interview not worthy of belief." P4. The BIA explained that Mr. Naiker knew of the couple's biological familial relationship, and "claims unconvincingly that he did not discuss the matter with the beneficiary" because he did not find the familial relationship "relevant." P4. The BIA explained that USCIS "reasonably found unpersuasive the petitioner's explanation that the derogatory information was 'false allegations' sent by certain people who may be opposed to his marriage to the beneficiary," noting that Mr. Naiker did not raise those concerns about people opposed to his marriage during his consular interview. P4. The BIA also noted that Mr. Naiker claimed on appeal that he and Ms. Pillay received threatening messages on Facebook from relatives who disapproved of their marriage, and that those relatives may have been involved in providing the derogatory information to the consular office, but did not provide USCIS or the BIA with any such evidence. *Id*. The BIA denied the appeal, finding that Naiker "did not meet his burden of establishing eligibility for the benefit sought" and finding that "good and sufficient cause to revoke the approval of the visa has been shown." P5.

Plaintiffs filed their Complaint with this Court on November 27, 2017 pursuant

ORDER – 4

to Section 10(b) of the Administrative Procedures Act ("APA"). Dkt. #1. They challenge the BIA's decision.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In the context of a case where a party is seeking review of an administrative decision, "[a] district court is not required to resolve any factual issues when reviewing administrative proceedings." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). "Instead, the district court's function is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Boyang, Ltd. v. I.N.S.*, 67 F.3d 305 (9th Cir. 1995). Accordingly, summary judgment "is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Eng'g Co.*, 753 F.2d at 770. In APA reviews, the court's review is based on the administrative record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–84 (1990).

## III. DISCUSSION

A United States citizen may file an I–130 petition on behalf of his or her alien spouse to request USCIS to adjust the alien spouse's classification to immediate-relative status. 8 U.S.C. § 1154(a)(1)(A)(i). Under the statute, the Attorney General must decide "[a]fter an investigation of the facts in each case" whether to approve the petition. 8 U.S.C. § 1154(b). The USCIS, a division of the Department of Homeland Security, completes the investigation on behalf of the Attorney General. 8 C.F.R. § 100.1.

The USCIS' investigation includes identifying fraudulent marriages entered into for the purpose of evading immigration laws. 8 C.F.R. § 103.2; 8 U.S.C. § 1154(c). The USCIS determines whether a marriage is fraudulent under the

ORDER – 5

Immigration and Naturalization Act by determining the couple's intent at the time of the marriage. *See Lutwak v. U.S.*, 344 U.S. 604, 73 (1953). If the USCIS determines a marriage is not bona fide, the I–130 petition must be denied and all future I–130 petitions on behalf of the beneficiary must be denied. 8 U.S.C. § 1154(c); *Vazquez v. Holder*, 602 F.3d 1003, 1014 n. 11 (9th Cir. 2010). However, the USCIS must support a finding of marriage fraud with substantial and probative evidence. 8 C.F.R. § 204.2(a)(1)(ii). Further, the approval of any petition may be revoked at any time for "good and sufficient cause." 8 U.S.C. § 1155.

Plaintiffs appeal the BIA's decision to affirm the revocation of Mr. Naiker's I–130 petition on the grounds that the affirmation violated: (1) the APA; (2) the Due Process Clause; and (3) 8 C.F.R. § 103.2(b)(16). Dkt. # 13. The Court analyzes each argument in turn.

**A. Administrative Procedure Act Claim**

Plaintiffs assert that Defendants "abused their discretion" by determining that Plaintiffs failed to submit sufficient evidence that their marriage was entered into in good faith. Dkt. # 13 at 7. Under the Administrative Procedure Act, a district court may review and set aside a final agency action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Agency action should be overturned only when the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001)). It is an abuse of discretion if the agency acts as if "there is no evidence to support the decision or if the decision was based on an improper understanding of the

law." *Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115, 1118 (9th Cir. 2010) (internal citations omitted).

"Agency action is valid if a reasonable basis exists for the agency's decision. A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (internal citations and punctuation marks removed). The district court "[examines] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 132 S.Ct. 476, 483 (2011). However, "if the evidence is susceptible of more than one rational interpretation, the court must uphold the agency's findings." *San Luis & Delta–Mendota Water Auth. v. Jewell*, 747 F.3d 581 (9th Cir. 2014) (internal citation and punctuation marks removed). The standard is "highly deferential, presuming the agency action to be valid." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).

Defendants contend that although Plaintiffs had submitted evidence to the contrary, the "thrust" of the BIA's finding is that Plaintiffs failed to sufficiently rebut the "derogatory information articulated in the NOIR." Dkt. # 14 at 6. It is certainly true that Plaintiffs submitted a large quantity of information to support their application. Plaintiffs submitted a marriage certificate, pictures from their wedding, written statements from friends and family attesting to the closeness of the couple and their relationship, evidence of commingling of financial assets, evidence of a bevy of social media and text contacts, and information concerning the legality of cousin marriage in Fiji and the rest of the world. Taken in isolation, this evidence may be compelling. However, Defendants say the USCIS and BIA considered this evidence and weighed it against contrary evidence, which included (1) the fact that Plaintiffs are biological first cousins; (2) the embassy's receipt of derogatory emails, one purportedly from Ms. Pillay, stating the marriage was fraudulent and done for

immigration reasons; (3) Ms. Pillay's alleged misstatements in her interviews, including a sworn statement that she was not related to Mr. Naiker. Dkt. # 14 at 7.

The Court finds that while there is some indicia of a bona fide relationship between Plaintiffs, given the highly deferential standard this Court must apply in reviewing USCIS and BIA decisions, the Court cannot say at this point that Defendants' decision was "arbitrary and capricious." *Family, Inc. v. U.S.Citizenship & Imm. Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (explaining that an agency's findings may not be overturned "unless the evidence presented would compel a reasonable finder of fact to reach a contrary result."). Defendants determined that Plaintiffs' proffered evidence, though voluminous, was insufficient to rebut the existing derogatory evidence. While Defendants problematically did not include some of the most important derogatory information in the administrative record (as discussed below), the Court cannot say at this point that the ultimate decision was "arbitrary and capricious," given the derogatory information that was included in the record, such as the age gap, familial relationship, and misstatements in written correspondence, and because the Court does not have a full record of what the BIA and USCIS considered in their decisions.[2] At this time, given the highly deferential standard this Court affords Defendants' decisions, summary judgment on this point is inappropriate.

**B. Due Process**

Plaintiffs claim the Defendants' reliance on "unspecified" derogatory information violated their due process under the Fifth Amendment. Dkt. # 13 at 10-11. Claims of due process violations are reviewed de novo. *Ramirez–Alejandre v. Ashcroft*, 319 F.3d 365, 377 (9th Cir. 2003). When bringing a due process claim, a

---

[2] Likewise, the Court is not in a position to second-guess credibility determinations made by the BIA as to whether Ms. Pillay's statement she did not know of the familial relationship at the time of her interview was "worthy of belief." P4. The record, though incomplete, does not contain evidence that is "so compelling" that a reasonable fact finder would be compelled to find for Plaintiffs. *Nakamoto v. Ashcroft*, 363 F.3d 874, 881-82 (9th Cir. 2004).

ORDER – 8

plaintiff must demonstrate (1) a liberty or property interest protected by the Constitution and (2) a lack of adequate procedural protections. *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). "Immediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility. This protected interest is entitled to the protections of due process." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013). Further, "the question of whether there is a protected interest in a benefit" is not the same as "the question of eligibility for that benefit." *Id.* Courts consider three factors outlined in *Mathews v. Eldrige* when analyzing the adequacy of procedural protections: (1) the private interest affected by the government's action; (2) "the risk of erroneous deprivation" of the affected interest under the procedures used; and (3) the government's interests. *Mathews v. Eldrige,* 424 U.S. 319 (1976).

Plaintiffs cite to *Ching*, arguing the USCIS violated Plaintiffs' due process rights by relying on undisclosed derogatory information in the form of the e-mails received by the embassy. Dkt. # 13 at 10-12. In *Ching*, the government denied an I–130 petition after concluding the alien spouse previously committed marriage fraud. *Ching*, 725 F.3d at 1153. In making its decision, the government relied solely on a six-sentence statement from the beneficiary's ex-spouse despite compelling and substantial rebuttal evidence. *Id*. at 1158–59. After applying the *Matthews* factors, the court held that a petitioner had a due process right to cross-examine the beneficiary's ex-spouse "under the specific circumstances of [the] case." *Id*. at 1159.

In applying the *Mathews* factors to this case, the Court cannot conclude, at this point, that Defendants violated Plaintiffs' due process rights. Unlike in *Ching*, Defendants here did not rely "solely" on the undisclosed derogatory e-mails. Defendants proffered at least some evidence to support the conclusion that Plaintiffs did not meet statutory eligibility, such as the couple's familial relationship, the age

gap, Ms. Pillay's apparent misrepresentations, and credibility determinations. P60. Moreover, although there is a lack of disclosure about certain derogatory e-mails, it is unclear whether this information is truly dispositive, and whether the nondisclosure matters from a notice standpoint. For instance, there is at least some evidence in the record that Plaintiffs were familiar with the derogatory emails: the NOIR suggests Ms. Pillay was shown at least one of the derogatory e-mails in question during her interview at the embassy in Fiji, and she responded by saying she did not send the e-mail, pointing to typos in her name. *Id.*; *see also* P77. Plaintiffs asserted that the e-mails were likely sent by relatives opposed to their marriage and had received threatening Facebook messages to that effect, but have not provided additional documentation to support this claim. P4. The record, as it currently stands, is unclear on Plaintiffs' knowledge, as well as Defendants' view of the importance of these e-mails.

The Court cannot make any determination as to the reliability of the derogatory e-mails, or whether it was proper for Defendants to rely on them in determining statuary eligibility, because the e-mails themselves are not part of the record. Moreover, the parties make no persuasive argument about the relative importance of the e-mails, so the Court cannot determine whether their nondisclosure truly affected the ultimate decision. The Court cannot conclude at this stage whether the "risk of erroneous deprivation" is so high as to amount to a due process violation. Accordingly, the Court believes summary judgment on this point is inappropriate at this time.

**C. Procedural Violations Under 8 C.F.R. § 103.2(b)(16)**

Plaintiffs also contend that the USCIS and BIA both violated internal regulations that require disclosure of derogatory information by not providing Plaintiffs with copies of the alleged derogatory emails received by the embassy. Dkt. # 15 at 5-6. The parties' dispute centers on 8 C.F.R § 103.2(b)(16), which states, in

relevant part:

> Inspection of evidence. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.
>
> (i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.
>
> (ii) Determination of statutory eligibility. A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner, except as provided in paragraph (b)(16)(iv) of this section.

8 C.F.R. §§ 103.2(b)(16)(i)–(ii). The Ninth Circuit has also held that 8 C.F.R. § 103.2(b)(16)(i) requires the government to make a petitioner "aware" of derogatory information and to provide an opportunity to "explain" the derogatory information. *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010) (finding petitioner failed to raise a colorable argument under 8 C.F.R. § 103.2(b)(16)(i) since petitioner was aware of the derogatory information against him, was questioned about the derogatory information, and was given an opportunity to explain the derogatory information).

Here, Defendants argue they satisfied 8 C.F.R. § 103.2(b)(16)(i) by summarizing the primary allegation in the derogatory e-mails, which purported to be from Ms. Pillay and close family members who indicated the marriage was fraudulent and done for immigration purposes. Dkt. # 16 at 3-4. Defendants provided such a summary in the initial NOIR, which was referenced in later decisions. P4, P52, P60. 8 C.F.R. § 103.2(b)(16)(i) appears to apply a low bar that Defendants have seemingly crossed with the summaries provided in the NOIR. *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010) (finding petitioner "failed to raise a colorable constitutional argument" under 8 C.F.R. § 103.2(b)(16)(i) since petitioner was aware of the

ORDER – 11

derogatory information against him, was questioned about the derogatory information, and was given an opportunity to explain the derogatory information).³ Based on the record the Court cannot conclude that Defendants did not "advise" Plaintiffs of the derogatory emails "considered" in the USCIS' decision in violation of 8 C.F.R. § 103.2(b)(16)(i).

The Court sees a different problem with respect to 8 C.F.R. § 103.2(b)(16)(ii). 8 C.F.R. § 103.2(b)(16)(ii) requires that "[a] determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner," unless that information is classified. Defendants do not dispute that the underlying derogatory e-mails in question were never "disclosed" to Mr. Naiker, the petitioner, and never made part of the record. Nor do Defendants make any assertion that the alleged derogatory information is classified. The NOIR, USCIS decision, and BIA decision all held that the denial of Plaintiffs' statutory eligibility was based, at least in part, on these derogatory emails. Specifically, the BIA based its ultimate decision upholding revocation on determining that the information that Mr. Naiker provided was "insufficient to rebut the derogatory information identified in the NOIR," which based its decision on the derogatory e-mails received by the embassy. P4, P60. However, Defendants do not cite to any portion of the record that shows the USCIS or BIA ever examined the derogatory e-mails in question, even though the decision to revoke the I-130 petition was based at least in part on the derogatory e-mails' contents. Defendants also fail to provide any evidence, in the record or otherwise, that the derogatory e-mails that were supposed to be in the record were ever "disclosed" to the petitioner, Mr. Naiker. These actions run contrary to the plain requirement of 8 C.F.R. § 103.2(b)(16)(ii) that the decision on statutory

---

³ This Court joins others in questioning why the USCIS does not simply have a policy to disclose the derogatory e-mails themselves, which would seem to offer more transparency and avoid these types of disputes. *See, e.g., Sehgal v. Lynch*, No. 15-2334, 2016 WL 696565 (7th Cir. Feb. 22, 2016) ("We have stressed before that "the better procedure" is for agencies to 'produce the statement in question' . . . and we are puzzled by USCIS's continued failure to do so.").

ORDER – 12

eligibility "be based **only** on information contained in the record of proceeding which is disclosed to the applicant or petitioner." 8 C.F.R. § 103.2(b)(16)(ii) (emphasis added).

Plaintiffs analogize this case to *Ghafoori v. Napolitano*, 713 F. Supp. 2d 871, 881 (N.D. Cal. 2010). Dkt. # 15 at 6. In *Ghafoori*, the U.S. District Court for the Northern District of California reviewed a DHS decision denying an I-730 derivative asylum petition filed on behalf of an alleged child of Afghani parents who had been granted asylum in the U.S. *Ghafoori*, 713 F. Supp. 2d at 874. The DHS based its denial on a doctor's analysis of x-rays taken of the child's bones, which concluded the child was older than she claimed. *Id*. While the analysis was disclosed and made part of the record, the x-rays were not. *Id*. The *Ghafoori* court agreed with the plaintiff that it was improper for DHS to rely on a doctor's letter without disclosure to the plaintiff of the underlying x-rays, which "would be incomplete without the x-rays analyzed." *Id*. at 880-81. The court concluded that the USCIS "violated 8 C.F.R. § 103.2(b)(16)(ii) by deciding Plaintiff's I–730 petition based on an evaluation of x-rays that were not disclosed to Plaintiff." *Id*. The court noted that "[d]ivorcing the doctor's analysis from the medical records on which he relied creates an impossible burden for any petitioner attempting to rebut his conclusion," which meant that "the right to rebut that the regulations explicitly confer would be nullified." *Id*. at 880.

Defendants counter by citing to the recent unpublished decision in *Mattson v. Kelly*, No. 315CV00182LRHWGC, 2017 WL 4102463 (D. Nev. Sept. 14, 2017). Dkt. # 16 at 3-4. In *Mattson*, USCIS issued a NOIR to revoke an I-130 petition based on the beneficiary's previous attempt to enter into a marriage to avoid immigration laws. *Mattson*, 2017 WL 4102463 at *1-2. The USCIS based its decision in part on a handwritten statement it received from the beneficiary's ex-wife, which USCIS summarized in its NOIR but didn't produce. *Id* at *3. The plaintiffs, citing *Ghafoori*, claimed that this action violated 8 C.F.R. §§ 103.2(b)(16)(ii) by denying plaintiffs an

ORDER – 13

opportunity to challenge the derogatory information. *Id*. at *8-9. The U.S. District Court for the District of Nevada rejected this argument and *Ghafoori*, claiming *Ghafoori* "contradicts binding Ninth Circuit precedent and the BIA's interpretation of the regulation," and held the written statement summaries complied with USCIS' obligations under 8 C.F.R. § 103.2(b)(16).[4] *Id*.

This Court is not bound by either case, but between the two, the Court finds *Ghafoori* more persuasive. Whereas *Ghafoori* noted the distinction between the disclosure and record-keeping obligations between the two parts of the regulation, *Mattson* appeared to conflate the requirements of the two subsections of 8 C.F.R. § 103.2(b)(16). *Compare Ghafoori,* 713. F. Supp. 2d at 880, with *Mattson*, 2017 WL 4102463 at *8. While 8 C.F.R. § 103.2(b)(16)(i) requires only that the agency ensure the Petitioner is "aware" of the derogatory information, 8 C.F.R. § 103.2(b)(16)(ii) confers the explicit right for Petitioners to have statutory eligibility based "only" on information in the record which is disclosed. There is no dispute here that the derogatory e-mails themselves were not part of the record, and not disclosed. As in *Ghafoori*, Defendants' decision disclosed only a summary of the derogatory e-mails, not the e-mails themselves, which rendered the summary "unimpeachable" by disallowing "no second opinion, and therefore no meaningful rebuttal." *Ghafoori,* 713. F. Supp. 2d at 880. Mr. Naiker was essentially denied an opportunity to rebut the derogatory e-mails, or to argue against their reliability. Moreover, this Court is constrained in its own ability to consider the reliability of the derogatory e-mails and the propriety of Defendants' reliance upon them because the e-mails were never made part of the record for review. This would seem to be precisely the situation 8 C.F.R. § 103.2(b)(16)(ii) seeks to avoid.

*Mattson*'s one-sentence dismissal of *Ghafoori* as "contradict[ing] binding Ninth

---

[4] The plaintiffs in *Mattson* appealed and the case is currently pending before the Ninth Circuit Court of Appeals, at Case No. 17-17292.

ORDER – 14

Circuit precedent and the BIA's interpretation of the regulation" is also unsupported by the authority it cites. The only "binding Ninth Circuit precedent" the *Mattson* court refers to in its analysis is *Hassan v. Chertoff,* which addressed only 8 C.F.R. § 103.2(b)(16)(i), not 8 C.F.R. § 103.2(b)(16)(ii). *Hassan v. Chertoff,* 593 F.3d 785, 789 (9th Cir. 2010). This Court also finds limited support for *Mattson*'s view of the BIA's "interpretation of the regulation," as the BIA's previous interpretations generally uphold the view that the derogatory information must be based on evidence contained in the record. *See Matter of Estime*, 19 I. & N. Dec. 450, 450 (BIA 1987) ("A determination of statutory ineligibility is not valid unless based on evidence contained in the record of proceedings."). In *In re: Shinmoto*, for instance, the BIA remanded a decision revoking a previously approved marriage-based visa petition because the NOIR was based on an undisclosed site visit report. *In Re: Shinmoto*, No. AXX XX5 296, 2008 WL 486920, at *2 (BIA Jan. 30, 2008). At the very least, previous BIA decisions do not definitively reject *Ghafoori*, as the *Mattson* court claims.[5] *Ghafoori* remains persuasive in holding immigration agencies to the recording and disclosure standards set forth in 8 C.F.R. § 103.2(b)(16)(ii).

The Court concludes that Defendants violated 8 C.F.R. § 103.2(b)(16)(ii) by denying Plaintiffs' statutory eligibility based on derogatory information that was not in the record and not disclosed to the petitioner, Mr. Naiker. The question then turns to what remedy is warranted. The Ninth Circuit requires a showing of prejudice before relief can be granted based on an agency's violation of its own regulation. *Kohli v. Gonzales*, 473 F.3d 1061, 1066 (9th Cir. 2007). As in *Ghafoori*, there is not enough evidence at this point to determine if Plaintiffs will ultimately be able to rebut all of

---

[5] The Court also notes that the BIA decisions the *Mattson* court cites are all unpublished decisions, giving them the same limited precedential authority as *In re: Shinmoto*. *Mattson*, 2017 WL 4102463 at *8 (citing *In re: Liedtke*, No. A070 656 080, 2009 WL 5548116, at *2 (BIA Dec. 31, 2009); *In re: Firmery*, No A75 419 573, 2006 WL 901430, at *2 (BIA Feb. 28, 2006); and *In re: Baguasan Payla*, No. A077 171 491, 2009 WL 3713183, at *1 (BIA Oct. 23, 2009)).

the derogatory information, as some of the underlying derogatory information is not presently in the record. Without a full record, this Court is limited in its review of the BIA's decision. The Court is not required, and does not intend to guess as to the full scope of the derogatory e-mails' contents; instead, the Court holds that by not including the derogatory information anywhere in the record, Defendants deprived Plaintiffs of the ability to have a decision on statutory eligibility based solely on information in the record that was disclosed to the petitioner. *See Ghafoori*, 713 F. Supp. 2d at 881 ("Since the Service's violation deprived Plaintiff of the ability to make a meaningful rebuttal, that is itself sufficient prejudice to justify relief.").

Accordingly, **on this basis only**, the Court **GRANTS** Plaintiffs' Motion. The Court will thus remand this case to USCIS for further proceedings in accordance with this Order.

### IV. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. # 13) is **GRANTED IN PART** and Defendants' Cross-Motion for Summary Judgment is **DENIED** (Dkt. # 14).

In so ruling, the Court takes no position on whether Plaintiffs actually meet the criteria for statutory eligibility for a marriage-based visa. Instead, this matter is **REMANDED** to USCIS with orders that it reconsider the I–130 petition and base its determination of statutory eligibility only on evidence in the record which is disclosed to the petitioner, Plaintiff Mr. Naiker, in accordance with 8 C.F.R. § 103.2(b)(16)(ii).

Dated this 29th day of November, 2018.

The Honorable Richard A. Jones
United States District Judge

ORDER – 16